**Larry FORNASH, Petitioner-Appellant,**

v.

**Ronald C. MARSHALL,
Respondent-Appellee.**

No. 81–3720.

United States Court of Appeals,
Sixth Circuit.

Argued May 24, 1982.

Decided Aug. 16, 1982.

Rehearing and Rehearing En Banc
Denied Oct. 20, 1982.

---

Mark Shenfield, Cleveland, Ohio, for petitioner-appellant.

Elizabeth Dean, Karen Kolmacic, Asst. Attys. Gen., Columbus, Ohio, for respondent-appellee.

Before MARTIN, Circuit Judge, and PECK and BROWN,* Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Petitioner Larry Fornash appeals from the district court's denial of relief on his petition for a writ of habeas corpus. Fornash claims that he was denied the effective assistance of counsel and denied due process of law by jury instructions which improperly shifted the burden of proof when he was convicted of the first degree murder of his common-law wife, Verna Joan Adkins, in an Ohio state court in 1970. We affirm the judgment of the district court.

Fornash and Verna Adkins had lived together in Canton, Ohio for about one year prior to a separation on September 19, 1969. Testimony at Fornash's trial indicated that they had a stormy and turbulent relationship. Verna was seeing another man at the time of the separation. Fornash attempted a reconciliation, and continued to maintain contact with Verna. The evening of October 14, 1969, Verna and Fornash arrived at the home of Verna's sister to pick up Verna's youngest daughter. The couple was arguing, and Fornash shoved Verna against her car and threatened to kill her.

The morning of October 15, 1969, Fornash unsuccessfully attempted to buy some .25 caliber shells from a local storekeeper he knew. Fornash testified at trial that he succeeded in purchasing a box of .25 caliber shells from another store, and that he had done so at Verna's request, since she was fearful of intruders and needed bullets for her gun. However, according to Fornash, he only gave Verna six of the shells, since he was "leery" of her past threats to kill

---

* Circuit Judge Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982, and became a Senior Circuit Judge.

him, and he placed the box containing the remaining shells in the console of his car.

At about 1:00 p. m. the afternoon of October 15, 1969, Fornash and Verna visited a local attorney to discuss the legal implications of their separation. At that time, Fornash repeated his threat to persuade the authorities to take Verna's children by her earlier marriage away from her because he had been living with her. After leaving the attorney's office, Fornash and Verna drove in separate cars to a local junkyard to replace a window in Verna's car that had been broken by Fornash during one of their earlier altercations. However, the junkyard manager was not present, so Fornash and Verna decided to wait in Verna's car for the manager to return.

An eyewitness who lived near the junkyard and could see the cars testified at trial that she heard a woman scream, "Help, please help, help, please help me, please," followed by two shots which came from Verna's car. She also testified that she then saw Fornash pull a woman from the car, place her in his car, and leave. Fornash testified that Verna pulled a gun on him when he again threatened to have her children taken from her, and as they struggled for the gun, it went off, shooting Verna. Fornash claimed that he then panicked, thinking that he would be held responsible for the shooting, so he grabbed the gun and shot himself with it. In a daze, he then unsuccessfully attempted to start Verna's car, dragged Verna over to his car, retrieved the gun and Verna's pocketbook and keys from her car, and drove off for the hospital.

On the way to the hospital, Fornash encountered a Canton police cruiser. He ignored the police order to pull over, shouting: "I got to get to the hospital, I shot my wife and I shot myself." The policemen escorted him to the hospital. When he arrived, he jumped out of his car and placed the gun on top of his vehicle, following which the policemen restrained him. Fornash collapsed as the police were frisking him, and he exclaimed as he fell to the ground: "I shot her ... it was a crazy

thing to do." Both Fornash and Verna had gunshot wounds in the abdomen. Verna was dead on arrival at the hospital, but Fornash survived.

Three warrantless searches of Fornash's car were conducted by law enforcement officials while Fornash was being treated in the emergency room. Two detectives from the Canton Police Department looked inside Fornash's car, which was parked at the hospital emergency entrance, after talking to Fornash in the emergency room, and they retrieved a live .25 caliber bullet from the front seat on the driver's side and a brown leather holster from the front seat floor. A second search by one of the detectives produced Fornash's blue denim jacket from the front seat. This search was prompted by Fornash's statement during questioning in the emergency room that he had taken the gun from the pocket of his jacket. A third search by Sergeant Branch of the Stark County Sheriff's Department produced the opened box of .25 caliber bullets placed by Fornash in the console of his car. Eight .25 caliber bullets from Fornash's pants pocket were also turned over to the police by hospital personnel.

Fornash was indicted for first degree murder by the Stark County, Ohio grand jury on November 3, 1969. Two lawyers were appointed to represent Fornash in February of 1970. The jury found Fornash guilty as charged after a trial in June of 1970, and Fornash was sentenced to life imprisonment.

An appeal of the trial court's denial of his motion for a new trial was taken by Fornash to the Ohio Court of Appeals for the Fifth Appellate District. The intermediate appellate court overruled Fornash's assignments of error and affirmed the trial court's judgment. The Ohio Supreme Court dismissed Fornash's subsequent appeal on November 3, 1971 for lack of a substantial constitutional question. These decisions are not reported.

Fornash pursued a prior federal habeas corpus action in *Fornash v. Kette*, No. C–2–76–901 (S.D.Ohio, March 1, 1977). This petition was dismissed for failure to exhaust

available state remedies. The district court determined, among other things, that a post-conviction action was still available to Fornash to assert that he was denied the effective assistance of counsel. Fornash alleges in his present petition that he pursued a post-conviction action alleging ineffective assistance of counsel, which was denied, and that his appeal to the Ohio Court of Appeals was denied in June of 1980. The state of Ohio contended in its Return of Writ that the record does not show whether an appeal was pursued to the Ohio Supreme Court on this issue; however, the state apparently is conceding exhaustion on the ineffective assistance of counsel issue, since this issue has not been further pursued or investigated by the state.

Fornash filed his present *pro se* petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio on September 15, 1980. Counsel was appointed, and Fornash's petition was referred to the United States Magistrate, who recommended on September 8, 1981 that relief be denied. The district court, Judge George W. White presiding, adopted the magistrate's recommendation on November 12, 1981 and dismissed the petition.

## I.

Since the defense theorized that Verna's shooting was accidental, Fornash claims that the crucial issues were intent and purpose. Accordingly, he complains that certain jury instructions shifted the burden of proof to him of the essential element of intent, thus denying him due process of law.

Fornash contends that the instruction that the jury could presume that he had a purpose or design for his voluntary acts as well as the instruction that it was presumed that he intended the reasonable and natural consequences of his acts were improper instructions. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Furthermore, Fornash claims that, because accident is not an affirmative defense in Ohio, the court erred when it instructed the jury that "[i]f the evidence fails to establish that the act was accidental, the burden of proof remains on the state to establish beyond a reasonable doubt all of the essential elements of the crime ...." App. 665. Fornash claims that this instruction was confusing and could have been interpreted by the jury as requiring him to prove by a preponderance of the evidence or even beyond a reasonable doubt that the shooting of Verna was an accident.

It is well established that "accident is not an affirmative defense" in Ohio. *State v. Poole*, 33 Ohio St.2d 18, 294 N.E.2d 888, 889 (1973). Accordingly, an Ohio defendant cannot be required to establish accident by a preponderance of the evidence as with affirmative defenses; instead, the defense of accident negates the essential element of intent, which the state must prove beyond a reasonable doubt. "Where the state has shown that the death was the result of design, purpose, or intent, ... then the notion of accident is necessarily excluded." *Id.*, 294 N.E.2d at 890 (quoting *Jones v. State*, 51 Ohio St. 331, 38 N.E. 79, 83 (1894)).

We are of the opinion that the jury instruction on accident was not constitutionally defective.[1] The state trial judge carefully explained that the burden was

1. The jury instruction concerning accident stated in its entirety:

 It is claimed that the defendant did not commit any crime because it was an accident.

 An accidental act is one that occurs unintentionally and without any mental purpose or decision to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably foreseen as a natural or probably [sic] result of some unlawful activity.

 If all the evidence, including that on the subject of accident, raises a reasonable doubt in your mind as to the defendant's intent, then you must return a verdict of not guilty to the charges of first degree murder, second degree murder and manslaughter. *If the evidence fails to establish that the act was accidental, the burden of proof remains on the state* to establish beyond a reasonable doubt all of the essential elements of the crime or any lesser included offense. App. 665 (emphasis added).

upon the state to prove beyond a reasonable doubt all of the essential elements of the crime of first degree murder, including the essential element "[t]hat the killing [of Verna Joan Adkins] was done purposely." App. 657. The trial judge subsequently explained that "[t]o do an act purposely is to do it intentionally and *not accidentally.*" App. 657 (emphasis added). Contrary to Fornash's assertions, the jury instruction that "[i]f the evidence fails to establish that the act was accidental, the burden of proof remains on the state to establish beyond a reasonable doubt all of the essential elements of the crime," App. 665, did not imply that Fornash had the burden to prove that the act was accidental. Instead, the instruction merely took into account Fornash's contention that the shooting of Verna was accidental and, taken in context, informed the jury that even if it determined beyond a reasonable doubt that it was not an accident, the burden of proof still *remained* with the state to prove all the essential elements of the crime. The trial judge's use of the word "remains" unambiguously demonstrates that the burden of

proof was never shifted with regard to accident.

The jury instructions on "purpose" and "intent" are more disturbing.[2] *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), held that a jury instruction that the "law presumes that a person intends the ordinary consequences of his voluntary acts" unconstitutionally shifts the burden of proof on the essential element of intent because the jury could interpret the instruction either as mandating a conclusive presumption that the defendant acted with intent or as shifting the burden of persuasion to the defendant. *Id.* at 524, 99 S.Ct. at 2459. Arguably, the Fornash jury instruction that "[a] person is presumed to intend the reasonable and natural consequences of his voluntary acts unless his actions are otherwise explained by the evidence," App. 658, is indistinguishable from the impermissible *Sandstrom* burden-shifting instruction.[3]

▬▬ Even if we assume that Fornash's jury instructions on "purpose" impermissibly shifted the burden of proof, there are other considerations which adversely impact

---

**2.** The jury was instructed on "purpose" as follows:

> An essential element of the crime is that the act be done purposely.
>
> Purpose is a decision of the mind to knowingly do an act with a design to accomplish a specific result. To do an act purposely is to do it intentionally and not accidentally.
>
> The purpose or design with which a person does an act is usually known only to himself unless he expresses it to others or indicates it by his conduct.
>
> *A person is presumed to have a purpose or design behind his voluntary acts unless his actions are otherwise explained by the evidence.*
>
> The purpose with which a person does an act is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence.
>
> If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the intent or purpose to kill may be inferred from the use of the weapon.
>
> *A person is presumed to intend the reasonable and natural consequences of his voluntary acts unless his actions are otherwise explained by the evidence.*

App. 657–58 (emphasis added).

**3.** This court in *Burton v. Bergman,* 649 F.2d 428, 431 n.3 (6th Cir. 1981), *vacated and remanded on other grounds,* —— U.S. ——, 102 S.Ct. 2026, 72 L.Ed.2d 477 (1982), held that *Sandstrom* is to be applied retroactively. This court has also determined that while a trial court may instruct a jury that it *may* infer intent from the facts, it is improper to instruct that it is *mandatory* to draw such an inference. *Krzeminski v. Perini,* 614 F.2d 121, 124 n.4 (6th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980). *See also, United States v. Williams,* 665 F.2d 107 (6th Cir. 1981). Finally, in *United States v. Davis,* 608 F.2d 698 (6th Cir. 1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980), (per curiam), this court indicated in dictum that use of the "clause 'unless there is evidence to the contrary,' . . . might have the effect of shifting the burden" when a jury instruction is given allowing an inference of intent from defendants' voluntary actions. *Id.* at 699. A similar clause was utilized in the instant case when the jury was informed that "[a] person is presumed to intend the reasonable . . . consequences of his voluntary acts *unless his actions are otherwise explained by the evidence.*" App. 658 (emphasis added).

on Fornash's federal habeas claim.[4] It appears that, despite twelve years of intermittent litigation over Fornash's conviction, this particular claim was not raised by Fornash before any court, state or federal, until it reached the district court on his second habeas petition.[5] No objection was made to the instructions on "purpose" at trial,[6] nor was this alleged constitutional error raised before the Ohio Court of Appeals or the Ohio Supreme Court.[7] Furthermore, it also appears that this claim was not expressly set forth in Fornash's instant *pro se* petition.[8]

**4.** It should be emphasized that we are assuming *only* that Fornash has a *colorable* constitutional claim that his due process rights were violated by jury instructions which impermissibly shifted the burden of proof. It is axiomatic that jury instructions must be evaluated in their entirety, *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), and the possibility exists that the alleged erroneous instructions were harmless error, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We do not reach these issues because of the disposition of this case.

**5.** We note that the issue we are addressing in the instant case is not one of failure to exhaust, since Ohio's post-conviction statute, as interpreted by the Ohio courts, precludes Fornash from a post-conviction challenge of the jury instruction where his constitutional claim could have been fully litigated at trial or on direct appeal. *Engle v. Isaac*, —— U.S. ——, —— n.28, 102 S.Ct. 1558, 1570 n.28, 71 L.Ed.2d 783, 799 n.28 (1982); *Keener v. Ridenour*, 594 F.2d 581 (6th Cir. 1979).

**6.** Arguably Fornash did not waive his right to claim error as to the jury instructions in the Ohio Court of Appeals by failing to object to them at trial. Ohio.R.Crim.Pro. 30, which provides the basis for Ohio's current contemporaneous objection rule, did not become effective until July 1, 1973, three years after Fornash's trial. In *Carrothers v. Hunter*, 23 Ohio St.2d 99, 262 N.E.2d 867 (1970), the Ohio Supreme Court indicated that when a trial judge gives an erroneous statement of law in the jury charge (as opposed to omitting a necessary item), then the trial judge's error of commission may be reviewed by the Ohio Court of Appeals without the complaining party's having objected to the charge as given. *Accord, State v. Lynn*, 5 Ohio St.2d 106, 214 N.E.2d 226 (1966).

**7.** Fornash concedes that he made no objection to the jury instructions at trial. However, he now claims that the Ohio Court of Appeals actually reviewed the jury instructions on direct appeal, and therefore "the state courts did have an opportunity to correct the constitutional errors presented in this habeas corpus proceeding."

The record indicates that Fornash assigned as error to the Ohio Court of Appeals "[e]rror by the court in its general instructions to the jury." App. 23. The Ohio Court of Appeals stated: "The court further finds from a careful examination of the record that there was no error prejudicial to the appellant, that he was not denied any constitutional rights and was not deprived of a fair trial by the allegations raised in [Fornash's] assignments of error...." App. 37. However, Fornash's Brief before the Ohio Court of Appeals, submitted by the state as an attachment to its supplemental brief before this court, reveals that he never raised a *Sandstrom*-type constitutional error, but instead complained that instructions on first degree murder should not have been included in the charge because there was insufficient evidence of intent. Before the Ohio Supreme Court, Fornash's grounds for jurisdiction were the insufficient evidence claim and a claimed evidentiary error. App. 23. It is clear that Fornash's claim of an unconstitutional shifting of the burden of proof was never presented to the Ohio courts.

Ohio's general rule is that "one who complains of error must give the trial court a chance to avoid error by calling the court's attention to any alleged error." *State v. Lynn, supra*, 214 N.E.2d at 229. Even assuming that Fornash did not waive his right to object to his allegedly erroneous jury instructions by failing to object at trial, *see* note 6 *supra*, the exception to this general rule for "errors of commission" in the jury instructions will not stretch to excuse Fornash's failure to claim error in the Ohio Court of Appeals from the alleged unconstitutional shifting of the burden of proof. The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals. *State v. Phillips*, 27 Ohio St.2d 294, 272 N.E.2d 347, 352 (1971); *State v. Lynn, supra*, 214 N.E.2d at 229.

**8.** Fornash has had a great deal of difficulty focusing on this particular issue. His *pro se* petition claimed: "Court erred in its charge to jury on lesser included offences [sic] to murder in the first degree." App. 8. Petitioner's first memorandum to the district court in support of his petition claimed error in the jury charge because it mandated that lesser included offenses could be considered only if the jury found that Fornash was not guilty of first degree murder, which he claimed impermissibly required him to prove the elements of the lesser included offenses. It was not until Petitioner's Post-Hearing Reply Brief, submitted after the magistrate's hearing, that he first raised his

■ It is our opinion that a recent Supreme Court pronouncement, *United States v. Frady*, —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), mandates that, because Fornash failed to allow the state courts an opportunity to rule on his claimed constitutional error as to the jury instructions, the "cause and actual prejudice" standard must be applied to determine whether Fornash's claim warrants habeas relief. In *Frady*, the petitioner had been convicted of first degree murder nineteen years earlier in the United States District Court for the District of Columbia, which at that time had jurisdiction over felonies committed in the District of Columbia. Frady failed to challenge his jury instructions at the trial level or on direct appeal. In a collateral attack on his conviction under 28 U.S.C. § 2255 (1976), Frady claimed that the "plain error" rule of Fed.R.Crim.P. 52(b) should apply to allow him to challenge, despite his procedural default, jury instructions which he contended improperly compelled the jury to presume malice. The Court of Appeals for the District of Columbia accepted Frady's "plain error" argument and determined that the challenged instructions were plainly erroneous. The Supreme Court reversed, mandating that the plain error rule is applicable only to direct appeals of a conviction, and determining that society's interest in the finality of judgments warrants imposition of the "significantly higher hurdle" of the "cause and actual prejudice" standard for collateral attacks on final judgments. *Frady, supra*, —— U.S. at —— —— ——, 102 S.Ct. at 1593–94, 71 L.Ed.2d at 829–30.

Although *Frady* was concerned with a collateral attack on the final judgment of a federal court, it is clear that the same considerations apply to federal collateral review of state court judgments. In *Frady*, the Court buttressed its argument that the "plain error" rule was inapplicable to federal collateral review of a federal conviction by citing its earlier decision in *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), that the plain error standard was inappropriate for federal collateral review of a state court conviction. *Henderson* and *Frady* delineate three factors which justify rejection of the plain error standard for federal collateral review of state judgments: the state's strong interest in preserving the finality of its judgments, the state's interest in orderly trial procedure, and considerations of comity. *Henderson, supra*, 431 U.S. at 154, 97 S.Ct. at 1736, and *Frady, supra*, —— U.S. at ——, 102 S.Ct. at 1593, 71 L.Ed.2d at 829. The *Frady* Court also quoted with approval the following language from *Henderson*:

"Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.

*"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error*

---

*Sandstrom* argument in connection with the charge on first degree murder. However, although it is unclear whether the magistrate or even the district judge was aware that Fornash was attacking the "purpose" instructions, it is clear that the general proposition that the burden of proof on intent was impermissibly shifted to Fornash was eventually raised before both the magistrate and the district court.

Fornash claims that the state of Ohio has waived its right to assert Fornash's procedural default because the state failed to raise that claim before the district court. Although it is

true that "[i]n some cases a state's plea of default may come too late to bar consideration of the prisoner's constitutional claim," *Engle v. Isaac, supra* note 5, —— U.S. —— n.26, 102 S.Ct. 1570 n.26, 71 L.Ed.2d 798 n.26, Fornash's own delay in focusing on his *Sandstrom* argument is partially to blame for any delinquency in the state's relying upon a procedural default.

We conclude that this is not an appropriate situation to bar the state from raising its claim of procedural default; accordingly, Fornash's "waiver of waiver" argument must fail.

*on direct appeal." Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (emphasis added).

*Id.*

Fornash cannot demonstrate "actual prejudice" from the jury instructions as given. Therefore, relief on his claim of constitutional deprivation is unwarranted.

■ *Frady* mandates that "the degree of prejudice resulting from instruction error be evaluated in the total context of the events at trial." *Id.,* —— U.S. at ——, 102 S.Ct. at 1595, 71 L.Ed.2d at 831. Furthermore, Fornash "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.,* —— U.S. at ——, 102 S.Ct. at 1596, 71 L.Ed.2d at 832. Fornash has not shown that the instructions on "purpose" operated to his actual disadvantage, since there was abundant evidence of intent or purpose. Furthermore, the jury instructions on malice and premeditation, elements that the jury had to find in order to convict Fornash of first degree murder, substantially cured any possible defect in the "purpose" instructions.[9] In short, the jury could not have found malice and premeditation unless it had also found "purpose." "We perceive no risk of a fundamental miscarriage of justice" by rejecting Fornash's claims. *Id.,* —— U.S. at ——, 102 S.Ct. at 1597, 71 L.Ed.2d at 833.[10]

## II.

Fornash also claims that he was deprived of the effective assistance of counsel at trial. Fornash's complaints regarding the assistance of counsel he received are summarized as follows: (1) trial counsel were incompetent for failing to move to suppress a holster, a jacket, and ammunition found by police in warrantless searches of Fornash's car shortly after he arrived at the hospital; (2) his attorneys failed to conduct an adequate investigation prior to trial; (3) trial counsel failed to object to jury instructions allegedly shifting the burden of proof on the essential element of intent; and (4) one of his attorneys opened the door for admission of prejudicial "bad acts" testimony through his elicitation of Fornash's admission on direct examination that he had previously been arrested and had "been in trouble on quite a few occasions."

■ The standard for measuring ineffective assistance of counsel in the Sixth Circuit is that "the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance.... Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974).

■ It is clear that Fornash's last three complaints are without merit. A review of the record indicates that Fornash's trial attorneys were more than adequately prepared for trial and sufficiently acquainted with

---

**9.** The jury was given the following instructions on malice and premeditation:

> To constitute murder in the first degree the malice must be both deliberate and premeditated. Deliberation means that the act was not the result of a sudden impulse; that *some thought and consideration was given by the defendant before arriving at the purpose or intent to kill.* Premeditated means that this thought process was used and that the *purpose to kill was turned over in the defendant's mind and a decision to kill made prior to the commission of the act.* There is no definite period of time that must elapse for the formation of the purpose to kill. The test is not the duration of time but the existence

of the reflection. The law requires that the mind be sufficiently composed to reflect upon the killing and to understand the nature and character of the act and its consequences. *If you find that the defendant actually formed the purpose to maliciously kill, and deliberated and premeditated upon it* before he performed the act, that is sufficient for this element of the crime.
> App. 659 (emphasis added).

**10.** Since we have determined that Fornash has not shown "actual prejudice," we need not consider whether he has shown "cause." *Frady, supra,* —— U.S. at ——, 102 S.Ct. at 1594, 71 L.Ed.2d at 830.

the facts of the case to conduct an effective defense based on Fornash's accident theory. Fornash's contention that a more thorough investigation prior to trial might have turned up evidence tending to exonerate him is sheer speculation. Fornash has also complained that if his attorneys had been better prepared, they would have known that two young relatives of Verna were prepared to testify that Fornash had threatened to kill Verna several weeks prior to her death, and would have been prepared to move to suppress this prejudicial testimony before trial without allowing the jury to hear it. The trial judge initially admitted this testimony over defense objection, then excluded it after a weekend recess. In view of defense counsel's success in having the testimony excluded, it would be anomalous to rule that counsel was constitutionally ineffective for not having discovered the witnesses and moving before trial to exclude the evidence. Moreover, it probably would not have been error to admit this testimony, and, in addition, there was ample other proof of their turbulent relationship.

Fornash's assertion that his trial counsel were incompetent because they failed to object to his jury instructions merely reargues Fornash's earlier claim that he was denied due process by those instructions. We earlier concluded that those jury instructions did not so fatally infect Fornash's trial as to actually prejudice him. "Every trial presents a myriad of possible claims. . . . We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Isaac, supra,* —— U.S. at ——, 102 S.Ct. at 1574, 71 L.Ed.2d at 804.

Trial counsel's elicitation of Fornash's admission that he had previously been arrested and had "been in trouble on quite a few occasions" was apparently part of defense strategy to bolster the consistency of Fornash's testimony. Fornash testified that he was fearful that he would have to "shoot it out" with the Canton police on his way to the hospital, since he had previously been warned by the police that they would shoot him if they ever had the chance. For this reason, he claimed that he placed in his pants pocket the eight bullets later found by hospital personnel. By procuring Fornash's admission that he had been in trouble with the police numerous times, defense counsel made Fornash's claim that he was afraid of the police more believable. Also, there was considerable testimony of Fornash's and Verna's turbulent relationship, and admissions that Fornash had been arrested on assault and battery charges, including one incident involving Verna, might have led the jury to deduce that Verna had reason to conceal a gun in her car to defend herself from Fornash if necessary. Even if this defense strategy might appear "erroneous from hindsight," we conclude that defense counsel's actions were "taken for reasons that would appear sound to a competent criminal attorney, [therefore] the assistance of counsel has not been constitutionally defective." *Beasley, supra* at 696.

Fornash's primary argument for asserting his ineffective assistance claim resulted from his attorneys' failure to move to suppress evidence found in warrantless searches of his car.[11] The magistrate in his evidentiary hearing and the district judge in adopting the magistrate's recommendation to deny habeas relief both gave careful consideration to this claim. The district court determined from examining the transcript of the evidentiary hearing, which included testimony from one of Fornash's lawyers, that:

> [P]etitioner's attorney made a tactical decision regarding the evidence taken from petitioner's car. Apparently, the decision was made for two (2) reasons. First, that due to the claim that the shooting was an

---

11. We are assuming without deciding that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) does not apply to a claim of ineffective assistance of counsel which is grounded in trial counsel's failure to assert a Fourth Amendment claim. *See Satchell v. Cardwell,* 653 F.2d 408, 409 n.6 (9th Cir. 1981).

accident, introduction of the items seized did little to undermine that claim in light of testimony provided by Larry Fornash at trial, and other properly admitted evidence. Second, that the picture defense counsel wishes to portray of Fornash called for "a candid and forthright defense," which could be destroyed should he fight to exclude items found in petitioner's car.

App. 15–16.

The district court determined that Fornash did not receive ineffective assistance of counsel, concluding that under federal search and seizure law in effect at the time of Fornash's trial, the warrantless search of Fornash's car was reasonable under the circumstances, and that "[a]lthough a suppression motion might have been successful, the issue was so close that it cannot be said that a reasonably competent attorney could not have failed to make such a motion." App. 16, quoting *Satchell v. Cardwell*, 653 F.2d 408, 410 (9th Cir. 1981).

We are disturbed by the claim of Fornash's trial attorney at the magistrate's evidentiary hearing that the evidence found in Fornash's car was of "minimal evidentiary value." The presence of the brown leather holster on the floor in the front seat of Fornash's car could have been found by the jury to be inconsistent with Fornash's claim that Verna owned the gun which he claimed she pulled on him while they were arguing. Furthermore, the jury could have inferred premeditation from the presence of the holster in the car although no testimony linking that holster to the gun was introduced at trial.[12]

The district court adopted the magistrate's conclusion that the search was reasonable under current federal search and seizure law at the time of trial. In *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), police arrested several men sitting in a car for vagrancy, then transported the arrested men to police headquarters and towed the car to a garage. The car was then searched at the garage after the defendants were booked, and evidence unrelated to the vagrancy charge was seized. The Court determined that the search was not a contemporaneous one with the arrest, since the search was remote in time and place from the arrest, and there was no danger of the car being moved, since the men were under arrest and the car was in police custody. In *Crawford v. Bannan*, 336 F.2d 505 (6th Cir. 1964), *cert. denied*, 381 U.S. 955, 85 S.Ct. 1807, 14 L.Ed.2d 727 (1965), this court distinguished *Preston*. Crawford, arrested as he was opening the trunk of his car, was taken away in a police car, and a few minutes later the police searched his car. This court held that the search was incidental to and contemporaneous with Crawford's arrest and therefore not an unlawful search. Finally, in *Arwine v. Bannan*, 346 F.2d 458 (6th Cir.), *cert. denied*, 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed. 123 (1965), Arwine was left in his car as a decoy for several hours after his arrest by the police, who hoped to lure his accomplice back to the car. Arwine's car was finally searched with Arwine in handcuffs present after the car was driven by the police from the scene of the arrest to a police garage. This court held that the search was incidental to Arwine's arrest and was not unreasonable under the circumstances. We determined that the search was not remote in place because the place where Arwine was arrested was his car, not the location where the car was

---

12. The other items of evidence obtained in the warrantless searches were not inconsistent with Fornash's defense theory. Fornash testified that he had purchased the box of shells at Verna's behest and placed the box with the remaining shells in the console of his car after giving Verna six of the bullets. He also testified that he placed several bullets in his pants pocket while driving to the hospital because he thought he might have to "shoot it out" with the police, and that after he concluded he would not have to shoot it out, he ejected a live round of ammunition from the gun. Presumably the live round of ammunition found on the front seat of Fornash's car was either this live round that was ejected from the gun or a bullet that was dropped while Fornash was loading his pants pocket. The blue denim jacket contained Verna's car keys, which Fornash evidently carried with him when he was unable to get her car started.

parked. We further held that the presence of the defendant while the car was searched as well as the arresting officers retaining possession of the car distinguished this case from *Preston. See also, United States v. McKendrick*, 409 F.2d 181 (2d Cir. 1969) (search made after car moved to police station not unreasonable); *United States v. Powell*, 407 F.2d 582 (4th Cir.), *cert. denied*, 395 U.S. 966, 89 S.Ct. 2113, 23 L.Ed.2d 753 (1969); *United States v. Dento*, 382 F.2d 361 (3d Cir.), *cert. denied*, 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967) (search conducted twenty minutes after arrest after car moved to police station was "substantially contemporaneous" with the arrest and therefore not unreasonable.)

 We conclude that under the search and seizure law extant at the time of Fornash's trial, it is likely that the trial judge would have ruled that the initial search of Fornash's car, which occurred within a half hour of Fornash's arrival at the hospital and produced the holster and the round of live ammunition, was "substantially contemporaneous" with his arrest and therefore the evidence seized was not subject to suppression. We note that the car, still located at the emergency entrance, had not been secured by the police and therefore was still subject to being moved, that the search was reasonably related to the offense for which Fornash was arrested, and that it was not feasible for the arresting officers to have searched the car at the time of Fornash's arrest because of the need to secure immediate medical attention for both Fornash and Verna. We cannot say that trial counsel's failure to move for suppression of the evidence, particularly in light of their otherwise vigorous defense of Fornash, constituted ineffective assistance of counsel.

## CONCLUSION

We conclude that petitioner Fornash is not entitled to habeas relief because he has not shown actual prejudice as a result of the claimed burden-shifting jury instructions nor has he shown ineffective assistance of counsel. Accordingly, we affirm the judgment of the district court denying petitioner relief.