Sandra LOCKETT, Petitioner-Appellant,

v.

Dorothy ARN, Respondent-Appellee.

No. 83–3142.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 29, 1983.

Decided July 3, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 9, 1984.

Max Kravitz, William H. Bluth, Gerald G. Simmons, Columbus, Ohio, for petitioner-appellant.

William J. Brown, Atty. Gen., Karen A. Kolmacic, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before JONES, Circuit Judge, and PECK and BROWN, Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Following this court's decision granting habeas relief to appellant Sandra Lockett, appellee moved for rehearing. The appellee's motion is granted and the opinion and order of this court filed in this case on February 14, 1984 are vacated.

On appeal, Lockett contends that the district court improperly denied her petition for habeas corpus. Lockett makes three constitutional challenges to her Ohio conviction for aggravated murder and aggravated robbery on the grounds of (1) improper jury instructions, (2) ineffective assistance of counsel, and (3) an improper refusal to grant a continuance. We conclude that the appellant's failure to raise her constitutional objection to the jury instructions at trial precludes our review of those instructions on petition for collateral relief. We also find appellant's other claims without merit. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

Sandra Lockett was charged with the aggravated murder and aggravated rob-

bery of a pawnshop operator in Akron, Ohio. The State's case rested primarily on the testimony of a coparticipant, Al Parker, who agreed to cooperate in return for a lesser charge.

According to Parker's testimony, he, Lockett, Lockett's brother, James Lockett, and Parker's friend, Nathan Earl Dew, agreed to a common plan to rob the victim. The scheme called for Dew and James Lockett to enter the pawnshop and pretend to pawn a ring. After they had engaged the pawnbroker in this transaction, Parker would enter the shop and ask to examine a gun. Parker, who would be concealing bullets, would load the gun and proceed to rob the shop. Sandra Lockett, who knew the operator, would remain outside the shop in an automobile.

The robbery proceeded according to plan until the pawnshop operator grabbed the gun held by Parker. With Parker's finger on the trigger, the gun went off and the victim was killed. Parker fled the shop to the car where Sandra Lockett waited with the engine running. After Parker told Lockett what had happened, she placed the gun in her purse and drove to a relative's house where she called a taxi. Shortly after leaving the house in the taxi, Parker and Lockett were stopped by the police and questioned. Later, Lockett hid Dew and Parker in the attic of her parents' home.

Parker was subsequently apprehended and charged with aggravated robbery and aggravated murder with specifications, the latter offense punishable by death. Prior to trial, Parker pled guilty to the murder charge and agreed to testify against Lockett. In return for his testimony, the prosecutor dropped the aggravated robbery charge and the specifications to the murder charge, thereby removing the possibility of the death penalty. Lockett's brother and Dew were convicted of aggravated murder with specifications.

At Sandra Lockett's separate trial, her counsel, in the opening statement to the jury, explained her account of the circumstances surrounding the robbery. Lockett thought that Dew and her brother merely intended to pawn the ring. The defense called Lockett's brother and Dew to the stand; both invoked their fifth amendment privilege and refused to testify. Lockett chose not to testify in spite of her counsel's warning that if she did not testify, her defense would consist solely of cross-examination of the prosecution's witnesses.

Lockett was charged with aggravated robbery and aggravated murder. The aggravating specifications as to murder were (1) that the murder was "committed for the purpose of escaping detection, apprehension, trial or punishment" for aggravated robbery, and (2) that the murder was "committed while ... committing, attempting to commit, or fleeing immediately after committing or attempting to commit ... aggravated robbery." The jury was instructed that, in order to find Lockett guilty of aggravated murder, it had to find that she purposely had killed the pawnbroker while committing or attempting to commit aggravated robbery. The jury was charged that one who

purposely aids, helps, associates himself or herself with another for the purpose of committing a crime is regarded as if he or she were the principal offender and is just as guilty as if the person performed every act constituting the offense...

The trial court also instructed the jury regarding the intent requirement:

A person engaged in a common design with others to rob by force and violence an individual or individuals of their property is presumed to acquiesce in whatever may reasonably be necessary to accomplish the object of their enterprise...

If the conspired robbery and the manner of its accomplishment would be reasonably likely to produce death, each plotter is equally guilty with the principal offender ...

The jury returned a verdict of guilty and the court, following Ohio's statutory procedure, sentenced Lockett to death.

Lockett's convictions were affirmed on appeal by the Ohio Court of Appeals and the Ohio Supreme Court. *State v. Lockett,* 49 Ohio St.2d 48, 358 N.E.2d 1062 (1976). The United States Supreme Court struck down her death sentence but rejected her challenges to the convictions. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

Lockett's initial petition for writ of habeas corpus was dismissed by the district court for failure to exhaust her remedies available under Ohio's post-conviction statute, OHIO REV.CODE ANN. § 2953.21. Thereafter, Lockett amended her petition and deleted the unexhausted claims. The district court then found Lockett's claims to be without merit and her petition was dismissed. This appeal followed.

## I.

### The Jury Instructions

Lockett claims that the trial court's instructions unconstitutionally shifted the burden of proving intent or purpose for the crime of aggravated murder under OHIO REV.ANN. § 2903.01. In particular, Lockett objects to the instruction that a "person engaged in a common design with others to rob by force and violence an individual or individuals of their property is presumed to acquiesce in whatever may reasonably be necessary to accomplish the object of their enterprise." Lockett, relying on *Sandstrom v. Montana,* 442 U.S. 510, 512, 99 S.Ct. 2450, 2453, 61 L.Ed.2d 39 (1979), contends that this instruction violated due process because it forced her to assume the burden of disproving intent or purpose, a necessary element of the crime.

Lockett concedes that she failed to object to the jury instructions at trial as required by Rule 30, OHIO R.CRIM.P. Such a failure

to comply with the state's contemporaneous objection rule would ordinarily preclude a federal court from reviewing the instructions on a collateral attack. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Lockett maintains, however, that the Ohio courts waived her procedural default when they reviewed the merits of her claims on direct appeal. Alternatively, Lockett contends that her procedural default should be excused because she can demonstrate cause and actual prejudice for her failure to object. *Id.* We consider each of these arguments in turn.

■ Where a state procedural rule precludes litigation of a constitutional claim on appeal, a state prisoner is barred from raising the claim in a federal habeas proceeding absent a showing of cause and prejudice. *Wainwright v. Sykes; Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Lockett's failure to object at trial to the challenged instructions violated Rule 30, OHIO R.CRIM.P. This failure is adequate, under Ohio law, to bar appellate consideration of an objection. *Engle v. Isaac,* 456 U.S. at 125, 102 S.Ct. at 1570. *See also State v. Phillips,* 27 Ohio St.2d 294, 272 N.E.2d 347, 352 (1971).

■ A habeas petitioner may avoid a federal court's application of a state's contemporaneous objection rule by showing that the state courts did not rely on the procedural default in disposing of the constitutional claims. *See Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (summary rejection on the merits of a constitutional objection by state court demonstrates that the state court did not rely on procedural default). Lockett contends that, in the examination of the sufficiency of evidence on the element of intent or purpose to kill, the Ohio courts considered her constitutional challenges to the jury instructions and thereby waived her violation of the contemporane-

ous objection rule. On Lockett's challenge to the sufficiency of the evidence, the Ohio Supreme Court interpreted the provisions of the aggravated murder statute, OHIO REV.CODE ANN. § 2903.01, and the complicity provision, OHIO REV.CODE ANN. § 2923.-03. The court's discussion of the statutory requirement of intent and the proof on this issue, Lockett now maintains, demonstrates that the state court waived her failure to raise constitutional objections to the instructions at trial.

After careful consideration of Lockett's brief on direct appeal and the opinions by the Ohio Supreme Court and Ohio Court of Appeals, we are satisfied that Lockett never made the claim that the jury instructions unconstitutionally shifted the burden to her to prove absence of intent or purpose to kill. Lockett did contend that the murder statute required proof that Parker had a purpose to kill and that she shared that purpose. The evidence, she maintained, did not prove that either had such intent. The Ohio Supreme Court's answer was that the evidence supported a finding that Parker had an intent to kill. The court also held that, as it construed the complicity provision, the intent requirement was satisfied as far as Lockett was concerned by proof of Lockett's knowing participation in a robbery conspiracy that was reasonably likely to result in the death of the victim. *See State v. Lockett*, 358 N.E.2d at 1070–72. Thus, the contention made by Lockett in the state courts raised only a state law issue, did not raise the federal constitutional issue, and the Ohio court decided only the state law issue.[1]

In *Engle v. Isaac*, the Supreme Court held that Ohio's contemporaneous objection rule barred federal habeas review of constitutional challenges to jury instructions where no objection was made at trial. The Court stressed that respecting the state's procedural rules was necessary in order to protect the proper role of state tribunals. When a procedural default has occurred at trial, the trial court "has had no opportunity to correct the defect and avoid problematic retrials." 456 U.S. at 128, 102 S.Ct. at 1572. State appeals courts, moreover, "have not had a chance to mend their own fences and avoid federal intrusion." 456 U.S. at 129, 102 S.Ct. at 1572. We would ignore the rationale of *Engle v. Isaac* to hold, as the appellant urges, that a state court's discussion of the intent requirement under state law waives a procedural default with regard to a separate constitutional claim never presented to a state forum. Therefore, we determine that the Ohio state courts have not waived Lockett's procedural default.[2]

Lockett maintains that habeas review is not precluded by the state's procedural rules because she can establish cause and prejudice for her failure to object to the instructions at trial. In support of her contention that cause is present, Lockett asserts that the instructions were constitutionally so erroneous that the failure to object was an instance of ineffective representation. (She also seems to make the contention that this ineffective assistance amounted to a violation of the sixth amendment.) Thus, Lockett contends that this ineffective assistance constitutes cause un-

---

**1.** Lockett did present a challenge to the instructions on involuntary manslaughter and failure to instruct on the defense of accident which, she claimed in her state appeals, "substantially affected" her rights. Both the Ohio Court of Appeals and Ohio Supreme Court held that Lockett's failure to raise these objections at trial barred consideration of the challenges on appeal. This suggests that a direct constitutional challenge to the instructions on aggravated murder would have met a similar disposition in the Ohio courts.

**2.** In *Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir.1982), this court held that even a general objection to jury instructions will not excuse an Ohio prisoner's failure to clearly present constitutional objections to state appellate courts. Because the prisoner in that case had not raised the constitutional objection in state court, this court applied the cause and prejudice standard.

der *Wainwright v. Sykes.* It should be noted that, in so framing her contention, Lockett asserts the reverse of the contention made and overruled in *Engle v. Isaac;* there the contention was that cause was satisfied because the constitutional infirmity of the instruction was so unclear that the failure to object must be excused. We do not believe that Lockett's contention, under the circumstances presented here, is valid whether viewed as a denial ·of the sixth amendment right to counsel or viewed as a basis for showing cause under *Wainwright v. Sykes.* As stated in *Engle v. Isaac,* the Constitution "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Id.* 456 U.S. at 134, 102 S.Ct. at 1574.[3]

## II.

### Ineffective Assistance of Counsel

In her petition to the district court, Lockett maintained that she was denied effective assistance of counsel in violation of the sixth amendment. On appeal, Lockett claims that her counsel was ineffective for: (1) failing to impeach the testimony of Parker with a statement made to a co-defendant's attorney; (2) failing to develop the defense of accident; (3) failing to make timely objections to evidence of Lockett's bad acts and to the jury charge; and (4) making a motion for a directed verdict in the presence of the jury.

We *are* precluded from addressing that contention, however, by Lockett's failure to object contemporaneously to the jury charge as she is required to do under Rule 30, Ohio R.Crim.P. After careful review of this record, I can find neither cause nor prejudice for the failure to comply with that rule. *See Wainwright v. Sykes,* 433

U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Furthermore, I agree with the majority that at this particular moment in the Supreme Court's understanding of "comity," we are unable to find that the Ohio state courts "had a chance to mend their own fences" with respect to any erroneous jury charge. *Engle,* 456 U.S. at 129, 102 S.Ct. at 1572.

Although federal courts may reach otherwise procedurally barred claims where the "petitioner's failure to comply with the contemporaneous objection requirement was [not] a substantial basis for the state court's denial of petitioner's claims," *see County Court of Ulster v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980), or where the state court "chooses to ignore in its opinion a federal constitutional claim" the *substance* of which was "squarely presented," *see Wiley v. Sowders,* 647 F.2d 642 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981); *Butler v. Rose,* 686 F.2d 1163 (6th Cir.1982), I agree that under the particular facts of this case the Ohio courts were not presented with the essence of Lockett's current constitutional claim. As such, the Ohio courts did not have ample opportunity to "mend their own fences." *Engle,* 456 U.S. at 129, 102 S.Ct. at 1572.

We, therefore, return the question of the constitutionality of the jury charge employed in this case to the Ohio courts in the hope that they might indeed mend their own fences.

I note that the Ohio legislature has begun such a fence-mending operation. The legislature amended its aggravated murder statute to insure that the jury charge issued in this case will not be issued again.

---

**3.** We need not and therefore do not decide whether alleged ineffective assistance of counsel in failing to comply with a state procedural rule could ever be "cause" under *Wainwright v. Sykes.*

In keeping with the constitutional requirements of *Sandstrom v. Montana,* 442 U.S. 510, 512, 99 S.Ct. 2450, 2453, 61 L.Ed.2d 39 (1979), Ohio Rev.Code Ann. § 2903.01(D) now states:

No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. In no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because he engaged in a common design with others to commit the offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit, the offense. If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt.

I applaud the Ohio legislature's compliance with the requirements of due process and trust that the Ohio courts will follow suit.

■ In a recent decision, *Strickland v. Washington,* ⸺ U.S. ⸺, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth standards of review for claims of ineffective assistance of counsel. A habeas petitioner must first establish that counsel was "deficient" by showing that counsel had committed errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, the petitioner must show that counsel's errors prejudiced the defense and "deprive[d] the defendant of a fair trial." At ⸺. To evaluate a claim that counsel was deficient, the court must determine whether the "identified acts or omissions were outside the wide range of professionally competent assistance." The court must consider the "facts of the particular case viewed as of the time of the counsel's conduct" and recognize that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." At ⸺.

■ Counsel's method of cross-examination and the decision not to develop the defense of accident were matters of trial strategy. We cannot say that counsel's actions were unreasonable under the circumstances. *Henderson v. Cardwell,* 426 F.2d 150 (6th Cir.1970). Similarly, the mere failure to object to evidence and to jury instructions does not render counsel ineffective. *Whitsell v. Perini,* 419 F.2d 95 (6th Cir.1969). Presenting a motion for a directed verdict in the presence of the jury was, as the district court noted, a mistake on the part of counsel. Such a mistake, as the district court correctly found, does not render counsel's assistance ineffective throughout trial. Taken together, Lockett's allegations of ineffective assistance of counsel do not establish a violation of the sixth amendment.

## III.

### Denial of a Continuance

In her third claim for relief, Lockett alleges that the trial court's failure to grant a continuance deprived her of an opportunity to retain counsel of her choice. Lockett attached to her petition an affidavit from an attorney she intended to retain at trial. This attorney states that he contacted the trial judge the day before trial and the judge refused a request for a delay. The judge told the attorney to contact Lockett's court-appointed counsel.

 The decision to grant a continuance is a matter generally left to the sound discretion of the trial judge. *United States v. Allen*, 522 F.2d 1229, 1233 (6th Cir.1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976). Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket. *United States v. Inman*, 483 F.2d 738, 740 (4th Cir.1973). In this case, Lockett had ample time to choose counsel and seek a continuance; nothing in the record explains why she made the request the day before trial. Her "chosen" counsel, moreover, assisted ·the court-appointed attorney during the trial. Thus, we find that the denial of a request for a continuance was not an abuse of discretion constituting a violation of due process.

For the foregoing reasons, the district court's order denying the appellant's petition for writ of habeas corpus is AFFIRMED.

NATHANIEL K. JONES, concurring.

Upon reconsideration of the procedural issue presented by this appeal, I am in substantial agreement with the majority's result. I write separately, however, to emphasize that our decision to avoid the merits of this case is not in any way based upon the doctrine of exhaustion.

28 U.S.C. § 2254 generally requires a prisoner to exhaust available state remedies before proceeding in federal court. Under Ohio Rev.Code Ann. § 2953.21(A) (1975), petitioners may not raise claims in state court which could have been litigated before judgment or on direct appeal. *See Keener v. Ridenour*, 594 F.2d 581 (6th Cir.1979). Because Lockett's substantial constitutional challenge to the jury instructions might have been raised at trial or on direct appeal, she is now unable to avail herself of any "state corrective process." Lockett, therefore, has fully exhausted her state remedies in regard to her constitutional challenge to the state court's jury instructions. The exhaustion doctrine, thus, does not preclude us from addressing Lockett's contention that those instructions unconstitutionally shifted to her the burden of proving the essential element of "intent" in the crime of aggravated murder. *See* Ohio Rev.Code Ann. § 2903.01.