Lawrence Alton Smith

*v.*

State of Tennessee.

370 S. W. 2d 543.

(*Nashville,* December Term, 1962.)

Opinion filed September 11, 1963.

A. B. McNabb, Vester Neal Agee, Lebanon, for plaintiff in error.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, Nashville, for the State.

Mr. Justice Felts delivered the opinion of the Court.

The plaintiff in error, Lawrence Alton Smith, hereinafter called defendant, was indicted for murder in the first degree of E. L. Martin, the office and business manager for Castle Heights Military Academy in Lebanon, Tennessee.

Upon trial, the jury found defendant guilty of murder in the second degree and he was sentenced to serve ten years in the State Penitentiary (T.C.A. sec. 39-2403). Defendant has appealed in error and insists, among his other assignments, that the evidence preponderates against the verdict of guilt and in favor of his innocence.

There is little or no dispute as to the facts and circumstances of the killing. Defendant was a man 33 years of age, of good character, and had been employed as nightwatchman at Castle Heights School for about a year. It was while he was performing his duties as such nightwatchman at about 1:45 A.M. July 13, 1961, that the homicide occurred in the commissary which is located in the "Main Hall" near the business office of the school.

It appears that for some time prior to the shooting, the deceased, E. L. Martin, business manager of the school, suspected that some unknown person was pilfering petty cash from the several boxes kept in the commissary. Acting upon this suspicion, he had been secreting himself in the business office of the commissary and keeping a nightly watch in the hope of catching the culprit. On the night in question, he had come to his office, located in the "Main Hall" near the commissary, and had concealed himself in his office to watch for the thief.

It was a custom known and permitted by the deceased for defendant and the other nightwatchmen alternating with him to carry a pistol while on duty as nightwatch-

man. On the night in question defendant, in the course of his regular duty, entered the "Main Hall" to make a routine check for burglars or fires; and then, as was customary for the nightwatchmen there, he went into the commissary about 1:45 A.M. to get a snack. He did not turn on any lights, but used his flashlight, got a cold drink and some ice cream, and put the money for them in the change box.

Just as he was doing that, he heard a noise coming from the area of the manager's office, and saw a "bulk of something" with a flashlight coming toward him; and, as he testified, the area was without lights and so dark that one could not recognize another. Seeing this figure in the dark coming toward him, he became excited, and, as he put it, to protect himself and the property he was hired to watch, he pulled his pistol and fired its seven shots in the direction of the figure, killing the man who later turned out to be the deceased Martin.

After the shooting, defendant, without turning on the lights in the Main Hall, and without knowing whom he had shot, rushed out the door, which automatically locked behind him, and ran about a mile and a half from the Castle Heights School to the Lebanon Police Station, arriving there in a state of great emotion, crying hysterically, and told the police he thought he had shot a man.

It appears that prior to the trial an examination had been made of defendant by the experts on the staff at the Central State Hospital for the Insane, and they made a report regarding his mental condition, which was read into the record. This report stated that, while defendant was not insane, and appeared to know wrong from right so as to be responsible for his acts, he suffered from a

chronic brain damage and was excitable and highly emotional. The pertinent part of this report was as follows:

"He has a chronic brain syndrome, which means brain damage of a permanent type due to a previous injury or injuries; he is highly emotional, becomes upset, and shakes considerably in relating events which disturb him. He shows loss of coordination, some memory disturbance and serious impairment of hearing * * *"

It is true the verdict and the judgment thereon displaced the presumption of defendant's innocence, raised a presumption of his guilt in this Court, and put upon him the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. *Ivy v. State,* 197 Tenn. 650, 652, 277 S.W.2d 363, 364; *Anderson v. State,* 207 Tenn. 486, 495, 341 S.W.2d 385, 389.

Upon full consideration of the evidence, however, we think defendant has carried the burden of showing that the evidence preponderates against the verdict and judgment of murder; that there was really no evidence upon which the jury could reasonably find that in the shooting defendant acted with "malice aforethought," which is an indispensible ingredient of murder in the second degree. T.C.A. secs. 39-2401—39-2403. See also *Garrison v. State,* 163 Tenn. 108, 40 S.W.2d 1009, 1010; *Harper v. State,* 206 Tenn. 509, 515, 334 S.W.2d 933, 935.

It is true the fact of killing with a deadly weapon raises a presumption of malice in the absence of evidence to rebut this presumed fact. *Foster v. State,* 74 Tenn. 213, 214, 216; *Lewis v. State,* 202 Tenn. 328, 332-333, 304 S.W.

2d 322, 324-325. We think the undisputed facts rebutted the presumption of malice in the case before us.

There was no evidence of any actual malice or ill will on the part of defendant toward deceased, and he was unaware that deceased had hidden himself in the office. Defendant was employed as a nightwatchman, and permitted to arm himself, much like a peace officer, to guard and protect the property of the school. None of the lights in the commissary were turned on, and there was very little light in the place at the time of the shooting. The evidence indicates that it was difficult, if not impossible, for one person to recognize another under such conditions.

From a reading of the record, it seems clear that when defendant heard the noise and saw the "bulk of something" in the dark coming toward him with a flashlight, thinking it might be a robber engaged in a burglary or a prowler about to do violence to him, defendant became excited and emptied his pistol, firing seven times in the direction of the figure in the dark. He said he did this only to guard the property and protect himself. We think the undisputed evidence shows he acted under the stress of excitement and without "malice aforethought" and that this completely negatives a charge of murder in the second degree.

We think the evidence likewise shows that defendant was not guilty of the lesser included offense of voluntary manslaughter, which is the unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice. T.C.A. secs. 39-2409. *Whitsett v.*

*State,* 201 Tenn. 317, 299 S.W.2d 2, 6; *Nelson v. State,* 65 Tenn. 418, 421.

As above stated, we think the undisputed evidence makes it clear that defendant was acting under stress of excitement, and only to guard the property and protect himself, and not upon any sudden heat or passion with the intention of killing deceased; and that he was, therefore, not guilty of the lesser included offense of voluntary manslaughter.

█ We think, however, the evidence does show that defendant, in shooting at the figure in the dark with a flashlight, without waiting to ask any question or trying to ascertain the identity or purpose of that person, acted without proper precaution. Even though he was under the stress of excitement and in shooting intended only to guard the property and protect himself, he, nevertheless was guilty of such culpable negligence as to make the killing unlawful and to constitute involuntary manslaughter. T.C.A. sec. 39-2410. *Copeland v. State,* 154 Tenn. 7, 285 S.W.2d 565, 49 A.L.R. 605; *Roe v. State,* 210 Tenn. 282, 358 S.W.2d 308, 314, and cases there cited.

Upon the authority of *Corlew v. State,* 181 Tenn. 220, 180 S.W.2d 900; *Forsha v. State,* 183 Tenn. 604, 610-612, 194 S.W.2d 463, 466-467; *Cooper v. State,* 210 Tenn. 63, 356 S.W.2d 405, 411, the verdict and judgment of murder in the second degree will be set aside and the judgment herein will be modified so as to adjudge defendant guilty of involuntary manslaughter and fix his punishment at one year in the penitentiary, that being the minimum (T.C.A. sec. 39-2411), provided the State consents. Otherwise, the case will be remanded for a new trial.