STATE of Tennessee, Appellee,

v.

James Vernon CHAVIS, Jr., Appellant.

Court of Criminal Appeals of Tennessee, Knoxville.

Oct. 17, 1980.

Permission to Appeal Denied by Supreme Court Feb. 9, 1981.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Senior Asst. Atty. Gen., Nashville, Stanley J. Lanzo, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

Herbert A. Thornbury, Poole & Thornbury, Chattanooga, for appellant.

## OPINION

O'BRIEN, Judge.

James Vernon Chavis was found guilty of criminal sexual conduct in the first degree and burglary of a dwelling house with his respective sentences fixed at twenty-five (25) years in the State Penitentiary and not less than five (5) nor more than six (6) years. The sentences were fixed to run in consecutive order and consecutively to a prior sentence on an unrelated conviction.

Defendant challenges the constitutionality of T.C.A. § 39–3703 as amended by the Acts of 1978 (Adj.S.), Chapter 937, Section 1–8, effective May 11, 1978.

(a) He says the title to the Act is vague because it embodies more numerous offenses than indicated.

(b) The code section is vague in its definition of sexual conduct.

(c) He charges generally that the statute is broad and vague.

■ In regard to the first contention the State first asserts that any defect in the title of the Sexual Offenses Act enacted by the Public Acts of 1978, Chapter 937, has been cured by the subsequent codification of the Act, effective March 12, 1979 because defendant first raised this allegation on April 25, 1979. This, of course, is fallacious reasoning. The offense for which defendant was brought to trial occurred on October 21, 1978, prior to the codification of Chapter 937. It is plain the constitutional question arose prior to codification of the Act regardless of when defendant's motion to quash the indictment for that reason was filed. See *Howard v. State*, 569 S.W.2d 861, (Tenn.Cr.App.1978). Defendant claims a violation of Article 2, Sec. 17 of the Constitution of Tennessee which provides that no Bill shall become law which embraces more than one subject, to be expressed in the title. All Acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended. The statute in question derives from the enactment of a single comprehensive law to proscribe and punish criminal sexual offenses. The caption of the Bill, when enacted, recited specifically the applicable sexual offense statutes which it repealed. When a constitutional attack is levied on a statute every presumption in favor of its validity must be indulged and any doubt resolved in favor of, rather than against, the constitutionality of the Act. See *Dorrier v. Dark*, 537 S.W.2d 888, p. 891, (Tenn. 1976). The primary purpose of the caption or title to an Act is to assure that members of the Legislature and the public be given notice of Legislative proposals and to prevent surprise and fraud in the Enactments. See *Farris v. State*, 535 S.W.2d 608, (Tenn. 1976). We are of the opinion the caption of the subject Act adequately fulfilled its purpose and that the body of the Act was germane to the caption.

■ Considering the other two constitutional attacks, we have examined the Act in its entirety, with specific attention to the definition of sexual conduct and are satisfied that that term was defined with sufficient certainty and the Act itself was couched in such language that an individual of ordinary intelligence could reasonably understand its meaning. See *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Since the statute in question was repealed and replaced by the Sexual Offense Law of 1979, Public Acts of 1979, Chapter 429, Section 1, effective June 5, 1979, it is unlikely another attack will be made upon the statute in question. However, taken in its entirety we are satisfied that all constitutional aspects of the statute were met and that it sufficiently informed all citizens as to what was commanded or forbidden, and outlined the proscribed conduct with reasonable certainty.

■ Defendant takes issue with the trial court's denial of a preliminary hearing on the indictment charging first degree sexual offense.

Defendant relies on T.C.A. § 40–1131 which was repealed by the Acts of 1979, Chapter 399, Section 1, and has been superseded by Tenn.R.Crim.P. 5. However, even under the repealed statute, which was in effect on the date of defendant's indictment, the issue cannot be sustained. The preliminary hearing is based simply on the warrant of arrest. Even if his arrest were illegal, or after a preliminary hearing the magistrate dismissed the charges against him it would not prevent the grand jury from returning an indictment against him on either the same, or some greater charge, as was true in this case. The statute granted him a preliminary hearing prior to indictment and nothing more.

■ Defendant claims the admission of certain statements made by him after he was in custody, and after he had requested counsel, were admitted in violation of his

Sixth Amendment rights. After being identified in a line-up by the rape victim he was again administered his rights to counsel and against self-incrimination. Interrogation was initiated and defendant requested counsel. Subsequently, while going from the line-up room to another part of the Police Headquarters in the custody of a female officer defendant inquired, "If you knew who I was, why didn't you arrest me earlier?" Another time, while in an office with the same officer he said, "I must have done it since I'm here but I don't remember it." After a jury-out hearing the trial judge ruled out several other statements made by the defendant and ruled the above cited statements were admissible because they were voluntary on the part of the defendant, not as the result of any questioning in violation of *Miranda*.[1] Subsequently, when testifying before the jury, the police officer clarified her prior testimony about the circumstances under which the statements were made. We concur with the finding of the trial judge that they were voluntary. In *Miranda v. Arizona*, 384 U.S. 436, p. 478, 86 S.Ct. 1602, p. 1630, 16 L.Ed.2d 694 (1966), the United States Supreme Court said:

"... Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.... Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Underlining ours).

In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Court enlarged upon the proscription of *Miranda*, as follows:

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation'

under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."

Defendant offers no authority to support his contention other than stating that the admission of the officer's testimony was in violation of the Sixth Amendment of the Constitution of the United States. Although the evidence at the suppression hearing was extremely limited, in view of the officer's clarifying testimony before the jury, we are in accord with the finding of fact by the trial court and conclude that the statements made by defendant were voluntary and did not violate any of the provisions of either the Constitution of the United States or that of the State of Tennessee.

▪ Defendant complains of the admission of testimony of a witness who had seen the defendant in the area where the rape occurred approximately twenty-four hours prior to its occurrence. He also raises the issue of a comment by that witness about "previous trouble" in reference to the defendant.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The rape victim testified she lived on the first floor in an apartment complex which was patrolled by security guards. It was her testimony that defendant entered her apartment, sometime after three o'clock in the morning, through a sliding glass door which had been left open to accommodate admission of a pet cat. The witness, Alfred Dick, was called to testify that he lived in an adjacent apartment, and that at approximately four o'clock on the previous morning he found the defendant asleep in a chair on his apartment porch. Sometime after this occurred it was recalled that defendant had previously done some work for his wife. His address was confirmed from her cancelled checks and Mr. Dick talked to him several times by telephone, directing him to never come near that apartment again. Defendant acknowledged he had been there, and assured Mr. Dick he would not come there against. Relating his conversation with Mr. Chavis, the witness testified he had told him he did not want to create any problems for him, and did not know anything about any kind of previous trouble he had been into, and that he had heard some nice things about him, but did not want him to come around the house again. Defense counsel made a general objection to the admission of any of this evidence prior to the time the witness was introduced.

The testimony of Mr. Dick in regard to defendant's presence on his patio at about the same hour of the morning on the previous day was admissible to show identity, absence of mistake or accident, and could possibly be even considered as res gestae evidence. In regard to the witness' comment about "previous trouble", there was no contemporaneous objection to the testimony. Taken in context, there was no indication of any reference to prior criminal activities on the part of defendant. We find no prejudice to the defendant.

■ Defendant says he was entitled to a judgment of acquittal because the medical evidence could not support the verdict. It is argued that the testimony of the victim concerning penetration was highly questionable because she had stated to the police immediately after the incident that there had been no penetration; and the medical history taken from her shortly after the incident occurred indicated there was no penetration.

T.C.A. § 39–3702(a) (1978 Supplement) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

In her statement to the police the victim stated that her attacker used his hand on her private area, then mounted her, trying to have intercourse. She said he did not penetrate her because his penis was too large. She informed them he bit her in the vaginal area and kept trying to force his penis into her. In her testimony at trial she said that in his attempts to rape her there was not total penetration but he did manage to insert the top part of his penis, or glans, and did attempt oral sex. On cross-examination she said that her attacker used his hand, his tongue and his penis. She explained that when she gave her first statement to the police she was under the impression that penetration meant total penetration and that she was extremely upset at the time. The medical history given to the doctor stated that actual intercourse or penetration of the entire penis into the vagina had not occurred but had been attempted. The examination showed an abrasion to the clitoris, which is anterior to the vagina, and an abrasion at the fourchet which is at the back part of the vagina at the point of entrance. The doctor stated this was the most likely place for an abrasion to occur had intercourse been attempted.

Defense counsel's attempts to impeach the credibility of the victim were permissible and legitimate cross-examination however, it was the province of the jury as the assessor of the credibility of the witnesses to weigh the trial testimony against any prior inconsistent statement and to make the ultimate determination of truthfulness and credibility. The guilty verdict by the

jury has accredited the testimony of the victim at trial and resolves all conflicts in favor of the theory of the State. See *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978).

█ Defendant questions whether the trial court erred in instructing the jury that the law presumes a person intends the ordinary consequences of his voluntary acts, and cites *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) as authority that this jury instruction was given in error.

On the issue of intent the trial court instructed the jury in pertinent part:

"The law presumes a man intends what he does, and the usual and natural consequences of his acts."

Insofar as the conviction for criminal sexual conduct is concerned the State argues correctly that the thrust of the decision in *Sandstrom*, supra, is not applicable to the circumstances of this case. The Sexual Offense Act under which defendant was charged does not include intent as an element of the offense of criminal sexual conduct in the first degree. So it is that if that were the only offense for which defendant was convicted there would be no error in the jury instructions. However, another count in the indictment charges defendant with breaking and entering with the intent to commit a felony. Thus, the above quoted jury instruction impinges directly on the protection afforded by the Fourteenth Amendment requiring that the government prove every element of a criminal offense beyond a reasonable doubt. The State suggests that since *Sandstrom* was decided on June 18, 1979, almost two months after the trial of this case on April 25, 1979, that the rules stated there should not be given retroactive application. However, *Sandstrom* did not elucidate some new principle of constitutional law, but reiterated a rule that was conclusively stated as long ago as 1952. See *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The *Sandstrom* opinion cited the following statement from *Morissette*:

"'It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presump-

tion of intent from an act.' It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts ... [But] [w]e think presumptive intent has no place in this case. *'A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense.'* A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, *'this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.'* 342 U.S. at 274–275, 72 S.Ct. at 255–256. (Emphasis added)."

We have concluded the jury instruction regarding the presumption of intent was erroneous insofar as the burglary count of the indictment was concerned. We also conclude that under the circumstances of this case the delivery of the erroneous instruction was harmless error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. State*, 385 S.W.2d 758, 215 Tenn. 318 (1965); Rule 36(b), Tenn.R.App.P. The defendant was positively identified by the victim in this case at a pre-trial line-up, as well as at trial. His fingerprint was found on a telephone which he had handled according to a report by the victim to the police made prior to defendant's arrest. His intent was established by the acts which he engaged in after entering the apartment, and not by any artificial presumption of law.

█ Finally it is said the court erred in fixing defendant's sentences to run consecutively.

The evidence established that on the date of the hearing of a motion to run the sentences concurrently defendant had at least

three burglary convictions and two convictions for criminal sexual conduct. The trial judge found defendant to be a persistent, multiple and dangerous offender. Under the guidelines established in *Gray v. State*, 538 S.W.2d 391, (Tenn.1976), there was no abuse of discretion in fixing the sentences to run consecutively.

The judgment of the trial court is affirmed.

DUNCAN and SCOTT, JJ., concur.