Stanley Barham CLARK, Petitioner,

v.

Jimmy C. ROSE, etc., Respondent.

Civ. A. No. 3:83-0766.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 7, 1983.

On Motion To File Answer
Out-of-Time March 16, 1984.

Order July 16, 1984.

On The Merits July 16, 1984.

On Motion For Stay Aug. 11, 1984.

Scott Daniel, Murfreesboro, Tenn., for petitioner.

Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION AND ORDERS

NEESE, Senior District Judge.

The petitioner Mr. Stanley Barham Clark applied *pro se* to this Court for the federal writ of habeas corpus, claiming that he is in the custody of the respondent-warden pursuant to the judgment of July 27, 1979 of the Circuit Court of Rutherford County, Tennessee in violation of the Constitution. 28 U.S.C. § 2254(a). Annexed to his application is Mr. Clark's affidavit that he is unable to pay the cost of this proceeding or give security therefor and a statement of his belief that he is entitled to redress. 28 U.S.C. § 1915(a). Accordingly, he hereby is

AUTHORIZED to commence and prosecute this proceeding without prepayment of fees or costs or giving security therefor. *Id.*

The applicant claims he exhausted remedies available to him under the law of Tennessee, 28 U.S.C. § 2254(b), by his direct appeal of his judgment of conviction to the Court of Criminal Appeals of Tennessee, which affirmed such judgment on July 27, 1981, and by applying for permission to appeal farther, which application was denied by the Supreme Court of Tennessee. He contends inferentially that he presented fairly to those Courts his federal claims of violations in his trial of:

—his right not to "be compelled in any criminal case to be a witness against himself," Constitution, Fifth Amendment; *Smith v. Estelle*, 602 F.2d 694, 704 (5th Cir.1979), *reh. den.*, 606 F.2d 321 (1979), *aff'd. sub nom. Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) ("[U]nder the fifth amendment a criminal defendant of course cannot be forced to discuss his alleged crime with anyone who is able to use his statements as evidence against him at his trial");

—his right "to have the Assistance of Counsel for his defence," Constitution, Sixth Amendment; "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him" *Pointer v. State of Texas*, 380 U.S. 400, 406–407, 85 S.Ct. 1065, 1069[10], 13 L.Ed.2d 923 (1965), although a defendant's right "to be informed of the nature and cause of the accusation against him" did not require the state of Tennessee to furnish him with its proof in its original form, *Bosley v. State*, 218 Tenn. 134, 401 S.W.2d 770, 771[1] (1966); and,

—his right not to be deprived by the state of Tennessee "of * * * liberty * * * without due process of law," Constitution, Fourteenth Amendment; *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459[6], 61 L.Ed.2d 39 (1979) (" '[A] State * * * may not shift the burden of proof to the defendant' " * * * to prove that he lacked the requisite mental-state to commit a deliberate homicide.)

On examination for purposes of preliminary consideration, it thus does not appear plainly from the face of the applicant's petition that he is not entitled to relief in this Court at this time. Rule 4, 28 U.S.C. fol. § 2254. Therefore, it hereby is ORDERED:

1. that the respondent-warden file an answer or other pleading within 43 days herefrom, *id.*, the noticed slow-movement of the mail providing good cause for additional time, 28 U.S.C. § 2243; Rule 81(a)(2), F.R.Civ.P.; and,

2. that the clerk of this Court serve forthwith by certified mail on the respondent-warden (or his successor) and the attorney general and reporter of Tennessee a copy of the petition herein and of this order, Rule 4, *supra*.

ENTER:

## ON MOTION TO FILE ANSWER OUT–OF–TIME ORDERS

### I.

The motion of the respondent to file his answer out-of-time hereby is

GRANTED.

### II.

It hereby is

ORDERED that counsel for the petitioner[1] file within 20 days herefrom[2] a brief addressing the issue:

> Whether the jury instructions of the trial judge regarding the presumption of malice, *see Transcript*, vol. 8 at 1086, 1087–1089, were constitutionally deficient under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 39 [2450, 61 L.Ed.2d 39] (1979), and, if so, whether such error was harmless.

*See Phillips v. Rose*, 690 F.2d 79 (6th Cir. 1982) and *Engle v. Koehler*, 707 F.2d 241 (6th Cir.1983), *cert. grant.*, —— U.S. ——, 104 S.Ct. 231, 78 L.Ed.2d 224 (1983).

## ON THE MERITS

This is an application by a state-prisoner for the federal writ of habeas corpus. 28 U.S.C. § 2254(a). The petitioner Mr. Stanley Barham Clark was convicted on July 20, 1979 in the Circuit Court of Rutherford County, Tennessee of murder in the first

---

1. The Court's memorandum opinion and orders herein of October 7, 1983 states erroneously that the petitioner is proceeding herein *pro se* and *in forma pauperis*.

2. The respondent will be allowed 15 days after such brief is filed in which to submit any responsive brief.

and second degrees.[1] *Inter alia,*[2] Mr. Clark contends that certain instructions given the jury shifted effectively the burden of proving malice, an essential element of the crimes charged, from the prosecution to him, in violation of his right to due process of law, Constitution, Fourteenth Amendment. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[3] Under the law of this Circuit, such contention has merit.

### I.

On the cold, rainy night of December 30, 1978, Mr. Charles Browning and his companion Ms. Joy Faulk were shot to death at near point-blank range while they sat in the cab of Mr. Browning's pickup-truck in a rural area of Rutherford County, Tennessee. Ms. Faulk's two young daughters Mitzi and Michelle, ages 6 and 3, respectively, were with their mother at the time of the shooting and were found afterward wandering along a roadway in search of assistance. The petitioner, a former live-in boyfriend of Ms. Faulk who had threatened to kill her if he ever caught her with another man, was charged with two counts of murder in the first-degree. His trial began on July 16, 1979 and was presided over by the Honorable William S. Russell.[4]

The Court of Criminal Appeals of Tennessee characterized the case against Mr. Clark as substantially circumstantial[5] and involving "* * * a somewhat complicated domestic situation. * * *" *State of Tennessee,* appellee, v. *Stanley Barham Clark,* appellant, unpublished opinion of February 27, 1981 in no. 79–106–II. Such appellate Court summarized the evidence thusly:

> * * * The former husband of Joy Faulk, one of the victims, is the stepbrother of Shirley Browning the wife of the other victim. Joy Faulk and Charles Browning were involved in a relationship which had considerably agitated defendant. Prior to taking up with Browning, Joy Faulk and Clark had lived together. Their cohabitation was apparently a stormy one. After they separated he became very upset because she was dating other men, including Browning. This homicide occurred on the night of December 30, 1978. Shortly after 9:00 on that night, a police officer observed a brown, or brownish colored pickup truck pursuing a red pickup truck in the general vicinity of the homicide scene. The brown truck was subsequently identified as the property of defendant. The red truck was owned by Charles Browning. An hour or two later the bodies of Browning and Joy Faulk were discovered in the truck which was parked in the driveway of Mrs. Faulk's former brother-in-law. Mitzi Faulk, six-year-old daugh-

1. The petitioner was sentenced to life imprisonment on the first-degree murder conviction and to 10–years' imprisonment on the second-degree murder conviction. Both such convictions were affirmed on direct appeal by the Court of Criminal Appeals of Tennessee, and the petitioner's application for permission to appeal to the Supreme Court of Tennessee was denied.

2. Mr. Clark asserts some 8 grounds in support of his petition. Each of those grounds was presented to the state appellate-courts, and therefore, as the respondent concedes, the applicant has exhausted his available state-remedies. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982); *Bowen v. State of Tennessee,* 698 F.2d 241, 243–244[2] (6th Cir.1983) (en banc).

3. *Sandstrom* was decided less than a month before the commencement of Mr. Clark's trial.

4. After a decade of service on the Court of Criminal Appeals of Tennessee, Judge Russell retired as a presiding judge thereof in 1979. Previously, he had served as a judge of the 23rd Judicial Circuit of Tennessee, which court exercised trial-jurisdiction of civil and criminal actions. From 1976–1981, Judge Russell chaired a special committee appointed by the Supreme Court of Tennessee to study and promulgate what ultimately were adopted as the Tennessee Rules of Criminal Procedure. Following his "retirement", Judge Russell has sat periodically as a judge in the trial- and intermediate-appellate-courts of Tennessee, and as a special justice on the Supreme Court of Tennessee.

5. Mitzi Faulk, an eyewitness to the shootings, identified Mr. Clark positively as the killer. Although her testimony was discredited on cross-examination, she was rehabilitated through the testimony of other witnesses.

ter of Joy Faulk, and her three-year-old sister, were passengers in Browning's truck at the time of the homicide. She told witnesses, and testified, that defendant, who was known as "Clicker" had followed them into the driveway of Jeff Faulk and shot her mother and Charles Browning. The murder weapon, a .25 caliber pistol, had been borrowed by defendant from a friend, Terry Hill, a few days before the shooting occurred. He told Hill the pistol had been stolen. Sometime later, it was found by the roadside near defendant's home. While police officers were searching for him on the night of the homicide, they encountered him in his pickup truck near the driveway to his home. He fled, resulting in a high speed chase for some distance before he was apprehended.

\*     \*     \*     \*     \*     \*

*Ib.*, at 1–2.

### II.

█ The trial-judge instructed the jury[6] that in order to find the petitioner guilty of murder in the first degree, the State must have proven beyond a reasonable doubt *inter alia*:

\* \* \* That the killing was malicious: That is, that the Defendant was of the state of mind to do the alleged wrongful act without legal jurisdiction or excuse. *If it is shown beyond a reasonable doubt that the alleged victims were killed, the killing is presumed to be malicious in the absence of evidence which would rebut the implied pre-*

*sumption.* [Emphases provided here.] \* \* \*

\*     \*     \*     \*     \*     \*

Transcript, pp. 1084–1085. As to the lesser-included offense of murder in the second-degree, the jury was instructed that the State must have proven beyond a reasonable doubt *inter alia* that the killing "was malicious" and that malice "is an essential ingredient" of second-degree murder. *Ib.*, at 1086. Additionally, the trial judge charged:

\*     \*     \*     \*     \*     \*

*All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable doubt that a killing has occurred, then it is presumed that the killing was done maliciously.* But this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State.

*Likewise, if a deadly weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, then there is raised a presumption of malice sufficient to support a conviction of murder in the second degree* unless it is rebutted by other facts and circumstances. \* \* \*

\*     \*     \*     \*     \*     \*

The question of whether the alleged killing was done with malice is for you to determine from the entire case, and you should look to all the facts and circumstances developed by the evidence to de-

---

**6.** It does not appear that defense-counsel objected at trial to any of the challenged jury-instructions in accordance with Tennessee's contemporaneous-objection rule. *See* Rule 30(b), Tenn.R. Crim.P.; *Pulley v. State,* 506 S.W.2d 164, 167[2, 3] (Tenn.Crim.App.1973), *cert. den.* by Supreme Court of Tennessee (1974) (error in jury-instructions cannot be raised for the first time on appeal). The respondent does not argue, however, that the bar of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), should be applied so as to preclude consideration of this claim on its merits.

It is clear that *Wainwright v. Sykes, supra,* does not preclude this Court from reaching the merits of the instant claim because the Court of Criminal Appeals of Tennessee did not rely on the failure of Mr. Clark to make a contemporaneous-objection but reached the merits of this claim, holding that the challenged instructions did not violate *Sandstrom, supra,* at 13–15. " \* \* \* Where a state appellate court does not rely on a procedural default, but reaches the merits of the federal law claim, the *Sykes* bar is inapplicable. \* \* \* " *Melchior v. Jago,* 723 F.2d 486, 490[4] (6th Cir.1983), *cert. den.* —— U.S. ——, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984).

termine whether the State has proven beyond a reasonable doubt the existence of malice. If you have a reasonable doubt as to whether the alleged killing was done with malice, then the Defendant cannot be guilty of murder in the second degree and you must acquit him of that offense.

\* \* \* \* \* \*

*Ib.,* at 1087–1089 (emphases provided here).

There is absolutely no doubt that the trial judge instructed the jury in accordance with the settled law of Tennessee;[7] in fact, his instructions were identical to those contained in the Tennessee Pattern Instructions.[8] However, some three years after the trial under consideration was completed, the Court of Appeals for this Circuit held that such "presumption-of-malice" instructions were infirm constitutionally under *Sandstrom, supra,*[9] because they " \* \* \* clearly had the effect of shifting the burden of persuasion regarding malice, an element of both first and second degree murder in Tennessee, to the defendant.

7. It has long been the rule in Tennessee that all homicides are presumed to be malicious. *See Everett v. State,* 528 S.W.2d 25, 26[2] (Tenn. 1975) ("All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption."); *Sikes v. State,* 524 S.W.2d 483, 485[2] (Tenn.1975) (same); *Gann v. State,* 214 Tenn. 711, 383 S.W.2d 32, 36[11] (1964) (same); *Lewis v. State,* 202 Tenn. 328, 304 S.W.2d 322, 324[1] (1957) (where a homicide is clearly proven and the slayer ascertained, and nothing else is shown, the killing is presumed to have been done maliciously); *Mitchell v. State,* 13 Tenn. (5 Yerg.) 340, 349–350 (1833) ("[if] the killing be proved, the law presumes that it was malicious, and [ ] it was incumbent on the defendant to show, by proof, matters in alleviation, or that it was a less offence"); *Coffee v. State,* 11 Tenn. (3 Yerg.) 283, 291 (1832) ("if A kill B, and that fact alone being established by the State, the malice is presumed, and the *onus* of exculpation is upon the defendant").

Additionally, the law of Tennessee presumes malice from the use of a deadly weapon. *Everett v. State, supra,* 528 S.W.2d at 26[2]; *Sikes v. State, supra,* 524 S.W.2d at 485[3]; *Gann v. State, supra,* 383 S.W.2d 36[12]; *Smith v. State,* 212 Tenn. 510, 370 S.W.2d 543, 545[4] (1963); *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327, 329[4] (1962). These presumptions of malice appear to be an outgrowth of the (now) unconstitutional presumption that every person intends the usual and natural consequences of his or her acts. In *Draper v. State,* 63 Tenn. 246, 247 (1875), the Supreme Court of Tennessee approved the jury instruction that

\* \* \* "every man is presumed to be innocent, until his guilt is legally made to appear; but when a homicide is clearly proven, and the slayer ascertained, and nothing more appears, the killing is presumed to be criminal, as every person is presumed to intend the usual and natural consequences of his acts."

The highest Court of Tennessee does not appear to have considered the validity of the foregoing presumptions subsequent to the decision of the Supreme Court of the United States in *Sandstrom.* Interestingly, however, the Supreme Court of Tennessee stated recently that " \* \* \* [m]alice may be *inferred* [emphasis provided] from the use of [a deadly weapon]. \* \*" *State v. Caldwell,* 671 S.W.2d 459, 463 (Tenn. 1984) (decided April 30, 1984). There is, of course, a big difference between an instruction which permits malice to be *inferred,* and one which says it will be *presumed.*

" \* \* \* While presumptions of an element [of a crime] are clearly unconstitutional, permissive inferences do not run afoul of the Constitution. \* \* \*" *Carter v. Jago,* 637 F.2d 449, 455–456[4] (6th Cir.1980), *cert. den.* 456 U.S. 980, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982), citing *Sandstrom, supra,* (upholding instruction that the jury "may infer" malice where one intentionally shoots another with a weapon in a manner calculated to cause death). *Cf. Harless v. Anderson,* 664 F.2d 610 (6th Cir.1981), *rev'd. on other grounds,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (instruction requiring jury to find malice if death caused by use of gun is unconstitutional). " \* \* \* This distinction between a permissible inference and a mandatory or burden-shifting presumption is critical. \* \* \*" *Krzeminski v. Perini,* 614 F.2d 121, 125, n. 4 (6th Cir.1980), *cert. den.* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).

8. *See* 7 West's Tennessee Practice, Tennessee Pattern Jury Instructions: Criminal, §§ 20.01, 20.04.

9. Of course, *Sandstrom* is applied retroactively in this Circuit. *Engle v. Koehler, supra,* 707 F.2d at 244, n. 1; *Burton v. Bergman,* 649 F.2d 428, 431, n. 3 (6th Cir.1981), *vac't'd. on other grounds* 456 U.S. 953, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982). The Court of Criminal Appeals of Tennessee has also applied *Sandstrom* retroactively because it " \* \* \* did not elucidate some new principle of constitutional law, but reiterated a rule that was conclusively stated as long ago as 1952. \* \* \*" *State v. Chavis,* 617 S.W.2d 903, 908 (Tenn.Crim.App.1980), *permis. app.den.* (Tenn.1981), citing *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

* * * " *Phillips v. Rose,* 690 F.2d 79, 81 (6th Cir.1982); *accord: Lockett v. Arn,* 728 F.2d 266, 272 (6th Cir.1984) (*mens rea* element of crime cannot be presumed from defendant's acts; such a presumption forces defendant to assume burden of disproving an essential element of the crime); *Engle v. Koehler,* 707 F.2d 241 (6th Cir. 1983), *aff'd. by equally-divided Court —* U.S. —, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984); *Krzeminski v. Perini, supra,* 614 F.2d at 123–124[1] ("What the state may not do is presume that an element of a crime exists as a result of given conduct and then place the burden of showing otherwise on the defendant.")

The respondent argues there was no *Sandstrom* -deficiency here because the trial-judge instructed the jury also that the burden was on the State to prove the existence of malice beyond a reasonable doubt and that the jury should consider all the facts and circumstances in determining whether the State had met such burden. This very argument was rejected in *Phillips v. Rose, supra,* because these additional instructions are not inconsistent rhetorically with the existence of a burden-shifting presumption, since a reasonable juror could have regarded the presumption of malice as a means by which proof of malice beyond a reasonable doubt could be satisfied. *Id.,* 690 F.2d at 81; *accord: Engle v. Koehler, supra,* 707 F.2d at 245.

Under the instructions given by the trial-judge, the jury could have understood reasonably that the prosecution could meet its burden of proving the element of malice merely by showing that a killing had occurred; that once the State demonstrated a killing, malice was presumed, and it then devolved upon Mr. Clark to negate the existence of such element. " * * * Such an instruction effectively shifts the burden to the defendant of disproving an element of the crime. This is constitutionally forbidden. * * * " *Krzeminski v. Perini, supra,* 614 F.2d at 124–125; *accord: Lockett v. Arn, supra,* 728 F.2d at 272 ("Such a presumption forces the defendant to assume the burden of disproving an essential element of the crime.")

### III.

The remaining consideration, then, is whether the giving of the foregoing jury-instructions constituted harmless-error. " * * * [H]armless error in the context of an asserted constitutional violation is an extremely narrow standard, permitting the state to avoid retrial only if it can be demonstrated beyond a reasonable doubt that the error did not contribute in any way to the conviction. * * * " *Melchior v. Jago, supra,* 723 F.2d at 493[14].

In this Circuit,

* * * the prejudicial effect of a *Sandstrom* instruction is largely a function of the defense asserted at trial. If the defendant acknowledges that an intentional, malicious killing occurred and only claims non-participation, then a *Sandstrom* instruction may be harmless. Conversely, if the defendant asserts lack of *mens rea,* a *Sandstrom* instruction can be extremely prejudicial even if overall proof of intent or malice is substantial. * * *

*Engle v. Koehler, supra,* 707 F.2d at 246; *accord: Lockett v. Arn, supra,* 728 F.2d at 273; *Conway v. Anderson,* 698 F.2d 282, 285 (6th Cir.1983), *cert. den.* 462 U.S. 1121, 103 S.Ct. 3092, 77 L.Ed.2d 1352 (1983); *see Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion); [10] *cf. Steele v. Taylor,* 684 F.2d 1193, 1205, n. 14 (6th Cir.1982), *cert. den.* 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d

**10.** The federal Supreme Court has not given clear guidance on the standard of harmless-error which should be applied to a *Sandstrom* -deficient jury instruction. In *Connecticut v. Johnson, supra,* a plurality of four justices followed essentially the standard applied in this Circuit—that such an instruction could constitute harmless-error only in rare cases, such as where the defendant conceded the *mens rea* elements of the offense; four other justices favored a traditional harmless-error approach. Until further guidance is provided by the Supreme Court of the United States, this Circuit continues to follow the standard it has used in the past. *Engle v. Koehler, supra.*

**300**

932 (1983) ("Constitutionally defective instructions impose an improper framework for the evaluation of all evidence and can virtually never be harmless.")

Clearly, this is not a situation where the defendant acknowledged at trial that an intentional, malicious killing had occurred and only claimed non-participation therein. Instead, Mr. Clark's defense accented both the physical and mental elements of the offenses charged. His defense was three-fold: (1) that he did not commit the killings and knew nothing about them; [11] (2) that, because of mental-illness and voluntary intoxication, he was not guilty; and (3) that, even if the jury should find the existence of all elements of the crimes, he should be found not guilty by reason of insanity.[12]

From the outset of the trial, it was clear that the defense was unlikely to concede anything, rather that it intended to put the State to its burden of proving beyond a reasonable doubt every element of the offenses charged, physical as well as mental. The reliance on a *mens rea* defense, in addition to the claim of non-participation, was evident throughout the entire trial:

(1) In his opening statement, counsel for Mr. Clark told the jury:

> * * * * * *
>
> We will further show you that even if, as unlikely as it might be, the Prosecutor were able to establish to your satisfaction that Stanley Clark did commit the acts alleged, we will show you by psychiatric experts that Stanley Clark has no recollection of participating in any act as is charged against him and that, even if the State should submit evidence to establish that the acts were committed, then the evidence will show that Stanley Clark has total amnesia of any knowledge of the deaths of Joy Faulk or

Charles Browning and that due to his mental condition he could not have possessed the mental capacity required to establish his guilt.

* * * * * *

Transcript, at 24.

(2) In his cross-examination of the witness Ms. Sylvia Kay Barrett, counsel for Mr. Clark brought out evidence that, for some months prior to the homicides, the petitioner had engaged in strange behavior; had acted as if he really didn't know what he was doing; lost some 35 pounds in weight; could not eat or sleep; was bothered by his reminences of his experiences in Viet Nam; could see in his dreams Vietnamese people coming at him; was greatly depressed; acted as if he were a different person; grew progressively more quiet; was very withdrawn; and was upset physically and depressed emotionally. *Ib.*, at 521–525.

(3) The trial-judge, himself, recognized (after the State had rested its case-in-chief) the nature of the evolving defense: " * * * The principal issue here, as the Court discerns it after three and one-half days of trial, is who killed these people, or if this Defendant did it what was his state-of-mind?" *Ib.*, at 763.

(4) Immediately prior to the presentation of evidence for the defense, the trial-judge inquired of counsel whether he should charge the jury on all four degrees of homicide. *Ib.*, at 774. Counsel for Mr. Clark requested him to do so, and stated " * * * that the appropriate charge is that if you find the Defendant killed while suffering from a mental disease or defect so great as to render him unable to formulate a specific intent to kill or to harbor malice, but not so great as to render him insane,

---

11. In the words of the Court of Criminal Appeals of Tennessee: "Defense counsel exerted a diligent effort to show, among other theories, that animosity existed toward Joy Faulk on the part of Sam Faulk, her ex-husband, and that Shirley Browning, wife of Charles Browning also had the motive and the incentive to commit the homicide[s]. * * * " Opinion, *supra*, at 2.

12. Under the law of Tennessee, the insanity-defense is considered by the jury only if it has first found that the State has proven beyond a reasonable doubt each element of the offense charged. *See Graham v. State,* 547 S.W.2d 531, 543 (Tenn.1977), citing the suggested jury-charge in *United States v. Brawner,* 471 F.2d 969, 1008 (D.C.Cir.1972); Tennessee Pattern Jury Instructions: Criminal, § 36.06.

his killing is involuntary manslaughter." *Id.*

(5) The trial-judge recognized also at this point in the trial that there had been " * * * some rather tangential indication that there might be a drunkenness factor in the defense and, of course, there is a charge that reduces what would otherwise be first degree murder to no more than second degree murder in the event of an effect [of intoxication]. * * * " *Ib.*, at 776. Defense-counsel requested that such a jury instruction be given. *Id.*

(6) As its first witness, the defense called Dr. John Griffin, a psychiatrist, who testified that, in his professional opinion, Mr. Clark was suffering from a longstanding condition of depression at the time of the homicides and " * * * that his mental illness was such that it rendered him substantially incapable of conforming his behavior to the requirements of the law. * * " *Ib.*, at 799–800. The testimony of Dr. Griffin supported also the petitioner's claim of amnesia, *ib.*, at 800, and that of voluntary intoxication, *ib.*, at 814–815. (Mr. Clark had told Dr. Griffin that, on the day of the homicides, he had consumed as much as 6 six-packs of beer plus a quantity of Vodka).

(7) Mr. Clark called as his second witness Dr. Roger White, also a psychiatrist. Dr. White testified that, in his professional opinion, Mr. Clark was suffering at the time of the homicides from " * * * a serious and rather longstanding depressive neurosis * * * " as a result of which " * * * he was not able to conform his behavior to the requirements of the law at that time * * *." *Ib.*, at 859–860. Dr. White's testimony supported further the petitioner's claim of amnesia. *Ib.*, at 860–862.

This Court's review of the trial-record reflects that Mr. Clark asserted a *mens-rea* defense which encompassed the essential element of malice. The trial-judge instructed the jury that

* * * [a] case of homicide cannot be murder unless at and before the killing the wicked intent, constituting malice aforethought, exists in the mind of the slayer. Malice is an intent to do any injury to another, a design formed in the mind of doing mischief to another. * * *

*Ib.*, at 1086–1087.

The psychiatric—and other—evidence which the defense offered bore on the petitioner's state-of-mind at the time of the slayings. This evidence was clearly relevant on the issue of malice, for, unless Mr. Clark's state-of-mind was such that it harbored "wicked intent", or intent or design to injure or do mischief to another, he did not act with malice and could not have been guilty of murder: As the trial-judge told the jury, the element of malice turned on the petitioner's state-of-mind, and, specifically, whether he " * * * was of the state-of-mind to do the alleged wrongful act without justification or legal excuse." *Ib.*, at 1084.

Additionally, the evidence of voluntary intoxication [13] related to the issue of malice, for, under the law of Tennessee, intoxication " * * * may negate a finding of specific intent. Thus, when the inquiry is whether or not the accused is guilty of first degree murder, it becomes relevant to know whether or not the accused was in a state of intoxication and, if so, the extent of its effect upon his mental state. * * * " *State v. Bullington,* 532 S.W.2d 556, 560 (Tenn.1976).

" * * * [E]ven when an intoxicated defendant is capable of forming specific intent, his drunkenness may be considered in determining whether he specifically intended the particular act for which he is on trial. * * * " *State v. Adkins,* 653 S.W.2d 708, 713[3] (Tenn.1983). Mr. Clark's alleged amnesia was relevant in so far as it reflected upon his state-of-mind at the time these offenses were committed. *See Lester v. State,* 212 Tenn. 338, 370 S.W.2d 405, 409 (1963); *Sparkman v. State,* 469 S.W.2d 692, 696–697 (Tenn.Crim.App.1970), *cert. den.* (Tenn.1970).

This is not a situation wherein the defendant admitted the *mens-rea* elements of

---

**13.** Although the evidence of voluntary intoxication was rather weak, it was sufficient to submit to the jury, as the trial-judge did in his instructions. Transcript, at 1096–1097.

the offenses and relied solely on the defense of insanity, thereby sufficiently reducing the likelihood that the jury applied the erroneous *Sandstrom* instruction, *cf. Connecticut v. Johnson, supra,* 460 U.S. at 87, 103 S.Ct. at 978; to the contrary, Mr. Clark relied upon a *mens-rea* defense and offered evidence on his mental-condition which bore on that defense as well as on his claim of insanity. Under these circumstances, the Court does not conclude that the challenged jury-instructions contributed in no way to the petitioner's convictions for murder.

## IV.

The petitioner, thus, is entitled to relief. The writ of habeas corpus will issue, directing the respondent-warden or his successor(s) to release the petitioner Mr. Stanley Barham Clark from custody under the aforementioned convictions forthwith unless the state of Tennessee has begun a retrial of him within 90 days herefrom.[14] *Peyton v. Rowe,* 391 U.S. 54, 66–67, 88 S.Ct. 1549, 1556[8], 20 L.Ed.2d 426 (1968); *Irvin v. Dowd,* 366 U.S. 717, 728–729, 81 S.Ct. 1639, 1646[13, 14], 6 L.Ed.2d 751 (1961).

## ORDER

For the reasons assigned in the accompanying memorandum opinion and order of this date, the writ of habeas corpus hereby is

GRANTED, and the respondent-warden, or his successor(s) in office, hereby is

ORDERED to release the petitioner Mr. Stanley Barham Clark from custody under his convictions of July 20, 1979 in the Circuit Court of Rutherford County, Tennessee forthwith unless the state of Tennessee has begun a retrial of him within 90 days herefrom.

## ON MOTION FOR STAY

The respondent gave timely notice of an appeal from the Court's order herein of

14. The Court does not consider redundantly any of the other grounds urged by Mr. Clark in his

July 16, 1984, that he release the petitioner from custody forthwith unless the state of Tennessee has begun a retrial of him within 90 days. The respondent moved the Court also to stay such order pending the appeal. *See* Rule 62(d), F.R.Civ.P.; Rule 8(a), F.R.App.P.

The equities of a stay balance in favor of the respondent: " * * * granting the stay for the time necessary to consider the [appeal] should not cause a significant incremental burden to [the petitioner], who has been incarcerated for several years, but doing so will relieve the State of [Tennessee] of the burden of releasing [the petitioner] or retrying him." *Tate v. Rose,* —— U.S. ——, ——, 104 S.Ct. 2186, 2187, 80 L.Ed.2d 805 (1984) (O'Connor, as Circuit Justice), (staying an order of the Court of Appeals for this Circuit, that a successful habeas corpus applicant be released pending retrial).

Accordingly, the application of the respondent for a stay hereby is

GRANTED, and the order herein of July 16, 1984 hereby is

STAYED pending completion of the appeal. Rule 23(c), F.R.App.P.